UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| PAYRANGE INC.,<br><br>        Plaintiff,<br><br>v.<br><br>KIOSOFT TECHNOLOGIES, LLC and TECHTREX, INC.,<br><br>        Defendants. | CASE NO.:<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>JURY TRIAL DEMANDED |

Plaintiff PAYRANGE INC. ("PayRange" or "Plaintiff"), through its undersigned counsel, brings this action against Defendants KIOSOFT TECHNOLOGIES, LLC ("KioSoft") and TECHTREX, INC. ("TechTrex") (collectively, "Defendants") for patent infringement, alleging as follows:

## INTRODUCTION

1.  Founded in 2013, Plaintiff PayRange Inc. developed the original mobile payment systems for non-networked unattended retail machines based on its patented technology. PayRange's innovations were widely acclaimed and accepted by customers. Unfortunately, TechTrex, Inc. and KioSoft Technologies, LLC have blatantly disregarded PayRange's patent rights by attempting to poach PayRange's customers with a copycat product and solicit new business with copycat product. PayRange seeks recovery of its damages, which could exceed $50 million based on lost profits, royalties and/or price erosion, as well as a permanent injunction to prevent Defendants' continued and future infringement by selling, maintaining, and supporting copycat products (e.g., mobile apps).

## NATURE OF ACTION

2.  This is a civil action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

3. As set forth in more detail below, Defendants have been infringing Plaintiff's patents, namely, United States Patent Nos. 9,659,296 (the "'296 Patent") and 9,134,994 (the "'994 patent") (collectively, the "Patents-in-Suit"), and continue to do so through the present date.

## THE PARTIES

4. PayRange is a Tennessee corporation with its principal place of business at 9600 NE Cascades Pkwy, Suite 280, Portland, OR 97220.

5. TechTrex is a Canadian corporation with its principal place of business at 3610 Nashua Drive, Suite 5, Mississauga, Ontario L4V1L2, Canada.

6. KioSoft is a Florida limited liability company with its principal place of business at 3600 S. Congress Avenue, Suite O, Boynton Beach, FL 33426. Upon information and belief, KioSoft is a wholly owned subsidiary of TechTrex.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. This Court has personal jurisdiction over Defendants because, upon information and belief, each Defendant conducts business in this District, and KioSoft distributes products within this State. TechTrex has directed and controlled such conduct. Defendants have further purposefully availed themselves of the opportunity to conduct commercial activities in this forum and have committed acts of patent infringement in this District as alleged in this Complaint.

9. This Court also has personal jurisdiction over KioSoft because, upon information and belief, KioSoft has a principal place of business in this District.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because, upon information and belief, this is a judicial district where KioSoft has committed acts of patent infringement as alleged in this Complaint, and this is a judicial district where KioSoft has a regular and established place of business. Further, Kiosoft is incorporated in this state with its principal place of business in this District.

11. Venue is proper in this District against Techtrex pursuant to 28 U.S.C. § 1391(c)(3), because the entity is foreign and therefore may be sued in any judicial district.

12. Defendants, upon information and belief, have used, sold, imported and/or offered for sale products that infringe PayRange's patents in this District, including at least the "CleanPay Mobile" and "CleanReader Solutions" products.

## BACKGROUND

### A. PayRange's Products and Intellectual Property

13. Founded in 2013, PayRange is a technology company offering innovative mobile payment solutions for various self-help retail industries.

14. PayRange's innovative technology allows customers to pay by phone when they use vending machines or other self-help retail machines. For example, while a traditional laundry machine requires customers to insert coins to use the machine, PayRange offers smart solutions to enable customers to make a cashless purchase using apps on their cell phones. Thanks to PayRange's patented technologies, no internet connection is required on the laundry machines.

15. PayRange provides quick and inexpensive solutions to vendors (called "operators" in the industry). Operators only need to install a small device manufactured by PayRange on their existing machines or kiosks. The PayRange device communicates wirelessly with the customer's cell phone running the app to complete the transaction. PayRange does not manufacture the machines or kiosks.

16. PayRange offers similar cashless payment solutions for other self-help retail machines, e.g., vending machines, arcade game machines, or any kiosks where money is collected before an action is performed, such as a car wash kiosk, or a parking kiosk, etc.

17. For example, PayRange's BluKey mobile payment device is designed to work with laundry machines and other types of machines that accept payments and allows consumers to conveniently use a mobile app to pay in seconds any coin operated machine or in-person merchant accepting PayRange.  The BluKey laundry products are PayRange's most sought after and sold products.

18. To protect their unique and innovative technologies and intellectual property rights, PayRange filed for patents.

19. On May 23, 2017, the United States Patent and Trademark Office ("USPTO") issued the '296 Patent, titled "Method and system for presenting representations of payment accepting unit events." A true and correct copy of the '296 patent is attached hereto as **Exhibit 1**.

20. On September 15, 2015, the USPTO issued the '994 Patent, titled "Method and system for updating firmware using a mobile device as a communications bridge." A true and correct copy of the '994 patent is attached hereto as **Exhibit 2**.

### B. Defendants' Infringing Products

21. Defendants directly compete with PayRange in self-help retail industries including the laundry and vending industries. In particular, Defendants offer a so-called "single-source" solution, i.e., it manufactures and sells the payment-collecting kiosks or terminals which the mobile payment functionalities are built-in. For example, Defendants' laundry solution includes its CleanPayMobile cell phone app, its CleanPay Kiosks, and/or its CleanReader Solutions terminals.

22. On or about February 12, 2019, senior executives of PayRange and Defendants had business meetings in Portland, Oregon, during which the parties discussed a potential business and licensing relationship. On information and belief, Defendants have had knowledge of PayRange, the Patents-in-Suit, and PayRange's products embodying the inventions claimed in the Patents-in-Suit at least since February 12, 2019.

23. Upon information and belief, by making and selling kiosks with built-in mobile payment functionalities, KioSoft directly or indirectly infringes on PayRange's Patents-in-Suit.

24. As a result of Defendants' infringement of the Patents-in-Suit, PayRange has suffered monetary damages and is entitled to a money judgment in an amount adequate to compensate for Defendants' infringement, together with interest and costs as fixed by the court.

25. Defendants' infringement has been and is willful and, pursuant to 35 U.S.C. § 284, PayRange is entitled to treble damages. Defendants' willful infringement is based at least on its

knowledge of PayRange, its products, and its patents. Defendants have either willfully and wantonly infringed Patents-in-Suit or have recklessly avoided knowledge of their own infringement.

## COUNT I
## INFRINGEMENT OF THE '296 PATENT

26. Plaintiff realleges and incorporates the allegations of the preceding paragraphs of this complaint as if fully set forth herein.

27. PayRange is the assignee and owner of all right, title, and interest in and to the '296 Patent. PayRange has the exclusive right to make, use, sell, and offer to sell any product embodying the '296 Patent throughout the United States, and to import any product embodying the '296 Patent into the United States.

28. The '296 Patent is an invention of systems and methods for transmitting a payment accepting machine's states and events to the mobile device and then representing that to the user.

29. Upon information and belief, Defendants have been and is now infringing claims 1, 12 and 18 of the '296 Patent in this State, in this District, and elsewhere in the United States, by, among other things, directly or through intermediaries, making, using, selling and/or offering for sale products with built-in mobile payment functionalities, covered by one or more claims of the '296 Patent to the injury of PayRange. Defendants are directly infringing, literally infringing, and/or infringing the '296 Patent under the doctrine of equivalents. Defendants are thus liable for infringement of the '296 Patent pursuant to 35 U.S.C. § 271(a).

30. When placed into operation by Defendants or its users, the Infringing Products infringe claim 1 of the '296 Patent as they perform a method of presenting representations of vending machine events. Such method comprises: at a mobile device with one or more processors, memory, one or more output devices including a display, and a radio transceiver, e.g., an iPhone 7: executing a mobile payment application on the mobile device, e.g., the CSCPayMobile app powered by Defendants, the mobile payment application being configured to identify one or more vending machines in proximity to the mobile device that are available to accept payment from the

mobile payment application, the identifying including detecting predefined radio messages broadcast by the one or more vending machines.

31. Upon information and belief, Defendants will continue to directly infringe the '296 Patent unless enjoined.

32. To the extent Defendants' Infringing Products, without more, do not directly infringe at least claim 1 of the '296 Patent, Defendants contribute to infringement of the same under 35 U.S.C. § 271(c) inasmuch as the Infringing Products offered for sale and sold by Defendants are each a component of a patented machine or an apparatus used in practicing a patented process, constituting a material part of PayRange's invention, knowing the same to be especially made or especially adapted for use in infringement of the '296 Patent.

33. For example, upon information and belief, the core software module of Defendants' CleanPayMobile app, which directly infringes the '296 Patent, is being provided by Defendants' to other service providers to incorporate into their own apps, such as CSCPayMobile app or Wash Connect app.

34. Upon information and belief, Defendants will continue to contribute to infringement of the '296 Patent unless enjoined.

35. Defendants actively encourage their business partners and/or customers to use Defendants' Infringing Products or their equivalents in an infringing manner. Defendants and Plaintiff had a business meeting in early 2019 where the patented technology was discussed. Despite such knowledge, Defendants actively induced its business partners and/or customers to infringe on Plaintiff's '296 Patent. Defendants have encouraged this infringement with a specific intent to cause its business partners and customers to infringe. Defendants' acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

36. Upon information and belief, Defendants will continue to induce infringement of the '296 Patent unless enjoined.

37. Defendants' direct infringement, contributory infringement, and inducement of infringement have irreparably harmed PayRange.

38. Pursuant to 35 U.S.C. § 284, PayRange is entitled to damages adequate to compensate for the infringement.

39. Defendants' infringement has been and is willful and, pursuant to 35 U.S.C. § 284, PayRange is entitled to treble damages. Defendants' willful infringement is based at least on Defendants' knowledge of PayRange, its products, and its patents. Defendants' conduct is egregious as it continued offering, selling, making and using the Infringing Products despite knowledge of the infringement. Defendants have either willfully and wantonly infringed the '296 Patent or have recklessly avoided knowledge of its own infringement, even when faced with knowledge of PayRange's own products and patents.

40. This case is "exceptional" within the meaning of 35 U.S.C. § 285, and PayRange is entitled to an award of attorneys' fees.

## COUNT II
## INFRINGEMENT OF THE '994 PATENT

41. Plaintiff realleges and incorporates the allegations of the preceding paragraphs of this complaint as if fully set forth herein.

42. PayRange is the assignee and owner of all right, title, and interest in and to the '994 Patent. PayRange has the exclusive right to make, use, sell, and offer to sell any product embodying the '994 Patent throughout the United States, and to import any product embodying the '994 Patent into the United States.

43. The '994 Patent is an invention of systems and methods for updating firmware using a mobile device as a communications bridge.

44. Upon information and belief, Defendants have been and is now infringing claims 1, 13, and 19 of the '994 Patent in this State, in this District, and elsewhere in the United States, by, among other things, directly or through intermediaries, making, using, selling and/or offering for sale products with built-in mobile payment functionalities, covered by one or more claims of the '994 Patent to the injury of PayRange. Defendants are directly infringing, literally infringing, and/or infringing the '994 Patent under the doctrine of equivalents. Defendants are thus liable for

infringement of the '994 Patent pursuant to 35 U.S.C. § 271(a). When placed into operation by Defendants' or its users, the Infringing Products infringe claim 1 of the '994 Patent as they perform a method of updating firmware using a mobile device as a communications bridge. Such method comprises: at a first mobile device of a first potential transactor, wherein the first mobile device includes one or more processors, memory, and two or more communication capabilities, (e.g., smartphone) wherein the two or more communication capabilities include a first communication capability and a second communication capability distinct from the first communication capability: while executing an application compatible with a mobile device-to-machine payment system (e.g., the CSCPayMobile app), receiving, from a server of the mobile device-to-machine payment system, an update for the application and a firmware image for a payment module of the mobile device-to-machine payment system via the second communication capability; after receiving the update for the application and the firmware image for the payment module: updating the application based on the update; and storing the firmware image for the payment module; subsequent to and independent from the receiving, the updating, and the storing, obtaining an information packet broadcast by the payment module via the first communication capability, wherein the information packet at least includes a current firmware version of the payment module and an authorization code for initiating a transaction for a payment accepting unit coupled with the payment module; comparing the current firmware version of the payment module with a version of the stored firmware image; and in accordance with a first determination that the current firmware version of the payment module does not match the firmware version of the firmware image stored by the first mobile device, sending, to the payment module, firmware update information via the first communication capability, wherein the firmware update information includes one or more data packets for updating the current firmware version of the payment module to the version of the firmware image stored by the first mobile device.

45.     Upon information and belief, Defendants will continue to directly infringe the '994 Patent unless enjoined.

46. To the extent Defendants' Infringing Products, without more, do not directly infringe at least claim 1 of the '994 Patent, Defendants contribute to infringement of the same under 35 U.S.C. § 271(c) inasmuch as the Infringing Products offered for sale and sold by Defendants are each a component of a patented machine or an apparatus used in practicing a patented process, constituting a material part of PayRange's invention, knowing the same to be especially made or especially adapted for use in infringement of the '994 Patent.

47. For example, upon information and belief, the core software module of Defendants' CleanPayMobile app, which directly infringes the '994 Patent, is being provided by Defendants to other service providers to incorporate into their own apps, such as CSCPayMobile app or Wash Connect app.

48. Upon information and belief, Defendants will continue to contribute to infringement of the '994 Patent unless enjoined.

49. Defendants actively encourage their business partners and/or customers to use Defendants' Infringing Products or their equivalents in an infringing manner. Defendants and Plaintiff had a business meeting in early 2019 where the patented technology was discussed. Despite such knowledge, Defendants actively induced its business partners and/or customers to infringe on Plaintiff's '994 Patent. Defendants have encouraged this infringement with a specific intent to cause its business partners and customers to infringe. Defendants' acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

50. Upon information and belief, Defendants will continue to induce infringement of the '994 Patent unless enjoined.

51. Defendants' direct infringement, contributory infringement, and inducement of infringement have irreparably harmed PayRange.

52. Pursuant to 35 U.S.C. § 284, PayRange is entitled to damages adequate to compensate for the infringement.

53. Defendants' infringement has been and is willful and, pursuant to 35 U.S.C. § 284, PayRange is entitled to treble damages. Defendants' willful infringement is based at least on

Defendants' knowledge of PayRange, its products, and its patents. Defendants' conduct is egregious as it continued offering, selling, making and using the Infringing Products despite knowledge of the infringement. Defendants have either willfully and wantonly infringed the '994 Patent or have recklessly avoided knowledge of its own infringement, even when faced with knowledge of PayRange's own products and patents.

54. This case is "exceptional" within the meaning of 35 U.S.C. § 285, and PayRange is entitled to an award of attorneys' fees.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that the Court find in its favor and against Defendants, and that the Court grant PayRange the following relief:

a. Judgment that Defendants infringe the Patents-In-Suit;

b. Judgment that Defendants are jointly and severally liable for infringement of the Patents-in-Suit;

c. That PayRange be granted with injunctive relief against Defendants and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, to prevent the recurrence of the infringing activities complained of herein, including removing all infringing mobile apps from all third party app stores such as the Google Play Store and Apple App Store, and for all further proper injunctive relief pursuant to 35 U.S.C. § 283;

d. Judgment that Defendants accounts for and pay to PayRange all damages and costs incurred by PayRange, caused by Defendants' infringing activities complained of herein;

e. Judgment that Defendants have willfully infringed the Patents-In-Suit and increase the damages award to PayRange up to three times the amount assessed, pursuant to 35 U.S.C. § 284;

f. That PayRange be granted pre-judgment and post-judgment interest on the damages;

g. That this Court declare this an exceptional case and award PayRange reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

h. That PayRange be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: March 3, 2020

Respectfully submitted,

By: /s/ joseph r. englander
Joseph R. Englander
Florida Bar No. 935565
FOWLER WHITE BURNETT
1395 Brickell Avenue, 14th Floor
Miami, Florida. 33131
Telephone:  (305) 789-9259
Facsimile:  (305) 728-7559
Email:  jenglander@fowler-white.com

James C. Yoon (PHV pending)
Ryan R. Smith (PHV pending)
Jamie Y. Otto (PHV pending)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100
Email:  jyoon@wsgr.com, rsmith@wsgr.com, jotto@wsgr.com

*ATTORNEYS FOR PLAINTIFF PAYRANGE INC.*